## *In re* YANCEY.

*(Circuit Court, W. D Tennessee.* August 30, 1886.)

1. CONSTITUTIONAL LAW—APPOINTMENT TO OFFICE—POWER OF THE PRESIDENT
TO FILL VACANCIES.
   Although the vacancy first happen during a session of the senate, if it continue to exist during the subsequent recess, the president has power to fill it up, under the constitution of the United States, art. 2, § 2, cl. 3. Per WOODS, Justice; JACKSON, J., *contra;* HAMMOND, J., *dubitante.*
2. UNITED STATES MARSHAL—APPOINTMENT AND COMMISSION—QUALIFICATION,
OATH, AND BOND—DUTIES OF DISTRICT JUDGE—REV. ST. §§ 782, 783.
   But, whether the president have that power or not, whenever an applicant appears with a commission from him, under the great seal of the United States, appointing him a marshal to fill such a vacancy, it is the duty of the district judge to take his bond, and administer the oath of office, without regard to any question of the president's power in the premises. If not a purely ministerial duty, it is not a judicial function that the judge performs, and he cannot withhold qualification because of any views he may entertain of the proper construction of the constitution. The commission and the seal import. *prima facie,* a right to be qualified, and beyond that the judge will institute no inquiry, whether objection be made or not.

At Chambers. Application to be qualified as marshal.

The department of justice having forwarded the commission of T. B. Yancey to be a marshal of the United States for the Western district of Tennessee to United States District Judge HAMMOND, with a request that he be qualified as required by law, and the commission delivered to him, he was notified to appear for that purpose. The district attorney, however, interposed the following letter:

"OFFICE OF UNITED STATES ATTORNEY,
"MEMPHIS, TENN., August 21, 1886.

*"Hon. E. S. Hammond, Judge United States District Court, Memphis, Tenn.*—DEAR SIR: I deem it my duty to call your attention to the fact that the only judicial decision upon the question in the United States casts at least a doubt upon the propriety of Thos. B. Yancey, Esq,, assuming the duties of marshal in this district under his recent appointment, and I suggest that you examine the question in order that he may act advisedly, and also that no trouble or inconvenience may arise in regard to the service of process.

"This can all be avoided by an authoritative determination of this question. or by Mr. Yancey's appointment by the circuit justice, until the office is filled by the president. If the commission lately issued to Mr. Yancey was improvidently done, he would incur the penalty affixed under section 1771, Rev. St., *i. e.,* imprisonment not exceeding five years, and a fine not exceeding ten thousand dollars. And if the opinion of Judge CADWALADER is the law, all service of process by him would not only be irregular, but be void, because, under that opinion, he would not be an officer *de jure* nor *de facto,* and could receive no compensation for any of his acts.

"Marshal Williamson was suspended on June 12, 1885. His term of office expired May 24, 1886, and Marshal Freeman was designated 'to perform the duties of such suspended officer in the mean time;' the suspension of Mr. Williamson being, however, upon its face until the end of the next session of the senate. If the vacancy occurred at the end of Mr. Williamson's term, it happened in May, and during the session of the senate, and Mr. Freeman was only a *de facto* officer after that date. If, however, he held until the

end of the session of the senate, his appointment is valid and regular. The opinion which leads me to make these suggestions is that of Judge CADWALADER, entitled 'Proceedings upon the question of incumbency of the office of attorney of the United States for the Eastern district of Pennsylvania,' and is reported in the eighth volume of the Internal Revenue Record, pages 138-146, and in which nearly every precedent and opinion is cited except that of Mr. Evarts regarding the same appointee, and that will be found in the same book at page 78.

"Very respectfully,                    H. W. McCorry, U. S. Attorney."

Indorsed: "The clerk will file this letter, send Dr. T. B. Yancey a copy of it, and notify him and the district attorney that I will confer with them at my chambers on Monday next at 10 o'clock.          E. S. Hammond."

The judge thereupon sent the following telegram to Mr. Justice Woods, assigned as circuit justice in place of Mr. Justice Matthews, who is traveling abroad during vacation:

"Memphis, Tenn., August 25, 1886.

"*Mr. Justice W. B. Woods, Washington, D. C.:* Marshal Williamson was suspended. Freeman designated, nominated, and rejected. Williamson's term expired while senate in session. Yancey nominated, and no action by senate. After adjournment, president commissions Yancey. District attorney makes question that the president cannot, and circuit justice must, appoint. Can you confer with circuit judge and myself; and, if so, will you come here, or shall we meet you at a place convenient to all?

"E. S. Hammond, U. S. District Judge."

Subsequently the district attorney sent to the district judge the following dispatch:

"Jackson, Tennessee, August 25, 1886.

"*Hon. E. S. Hammond, Memphis, Tennessee:* Since calling your attention to the question of Dr. Yancey's appointment I have become satisfied that Judge CADWALADER's opinion was wrong in stating that such a person would not be an officer *de facto.* Such being the case, the service of process by him would not be void. As this is the only interest my office has in the question, I communicate the fact to you, and leave him to act as he may be advised by his attorneys, and without either suggestion or objection on my part. Please have this shown to Genl. Wright.

"H. W. McCorry, District Attorney."

The district judge, having received the reply of the circuit justice, given in the opinion, forwarded it, with a statement of his own, to the circuit judge, from whom he received the letter copied in the opinion.

The facts are that M. T. Williamson was, on the twenty-fourth day of May, 1882, appointed and commissioned marshal of the United States for this district, by and with the advice and consent of the senate, for a term of four years, which ended May 24, 1886, *while the senate was in session.* The president, on the twelfth day of June, 1885, suspended Williamson, and thereupon designated and commissioned James H. Freeman to discharge the duties of "such suspended officer in the mean time," and "subject to all the provisions of law applicable thereto." When the senate again met, Freeman was nominated to be marshal, and his nomination was, a few

days before its adjournment, rejected. T. B. Yancey was then nominated by the president, but no action was taken by the senate, which adjourned. After this adjournment, and during the recess of the senate, the president appointed and commissioned said Yancey "to execute and fulfill the duties of that office according to law, and to have and hold the said office, with all the powers," etc., "until the end of the next session of the senate of the United States, and no longer; subject to the conditions prescribed by law."

*Chas. A. Stainback, Luke E. Wright,* and *Thomas B. Turley,* for the Marshal.

Before Woods, Justice, and Jackson and Hammond, JJ.

Hammond, J. Reflection has satisfied me that I should qualify this appointee as required by Rev. St. §§ 782, 783. One cannot read the very cogent opinion in the *Case of the District Attorney,* 7 Amer. Law Reg. (N. S.) 786, S. C. 8 Int. Rev. Rec. 138, without feeling that there is very grave doubt as to the validity of this appointment by the president, and it may be that there should be an authoritative judicial determination of the doubt. Judge Cadwalader calls attention to the difficulty of raising the question for judicial decision, and it is apparent that even that opinion itself is subject to challenge as being only an expression of the learned judge's views of the question, and not, in a strict sense, an adjudication of it; and he is himself careful, in his consideration of the subject, to distinguish between expressions of opinion that are authoritative with courts, and those which are not. It may be true, as suggested by the district attorney, that questions may arise as to the validity of the service of process; the appointee of the president may, by accepting the office, by taking the oath he asks me to administer, and by undertaking to exercise the duties of marshal, incur the severe penalties of Rev. St. § 1771; or even the president and the department officers may incur the penalties of section 1772,—and yet it may not be, and I think is not, the duty of the district judge to protect them, or any of them, from those penalties, by refusing to qualify the appointee, or to thus undertake to furnish any immunity from the inconveniences of disputed services of process. The statute does not impose on the district judge any judicial function to determine, while approving the bond and administering the oath, the right or title of the appointee to the office, or the power of the president in making the appointment. I am not prepared to say, nor called on to decide, whether the district judge, in approving the bond and qualifying the marshal, exercises a purely *ministerial* duty, as defined in *Gaines* v. *Thompson,* 7 Wall. 347, 353, and other cases, or not; nor whether its performance could be coerced by *mandamus;* nor whether any court has been authorized to issue that writ against him, if it be a proper remedy. It requires only a slight examination of the cases to show that these are very grave questions, like the other, and they should neither be

mooted, nor any attempt be made to decide them, until, in the due course of events, a contestation arises which shall present them formally for *judicial* action. But I feel quite sure that, whatever may be the precise nature of that duty, the appearance of a person holding the president's commission, and his offer to qualify, does not present to the district judge a case or question invoking from him any opinion or decision as to the president's power to make the appointment, whether objection, or suggestion of objection, be made to him or not. It is true, the statute says every "marshal" shall, before he enters upon the duties of his appointment, take, before the district judge, an oath, etc., and one appointed by the president or other functionary without authority cannot be "a marshal;" but it would be a very strained implication from this that the district judge thereby acquires the power to determine whether the applicant be "a marshal" or not. Strictly, he is not marshal until he qualifies, and cannot be; and there is inaccuracy of expression in the statute calling him so, if we think of it in reference to this supposed authority of the district judge to decide whether he be "a marshal" or not. It will not do to base so formidable a power on so bare an expression. It is not a *necessary* implication from the statute, and the rule is familiar that it is only such implications that are a part of the statute.

This duty might have been conferred as well upon the secretary of state or other executive officer, upon any commissioner, notary, justice of the peace, or the like; and the character of the official, as being executive or judicial, or his dignity of office or want of it, could add nothing whatever to the nature of the act performed. But the fact that it might be so variously authorized shows that it cannot have been the intention of the statute to empower the particular functionary selected with the judicial office of deciding whether the president has, in a given case, exceeded his powers. There is too much disparity of importance between the two for any sound basis of association of ideas in that regard. I should not surely qualify an applicant coming with a commission as marshal from, let us say, the mikado of Japan or the governor of a state; but, in refusing, I should not act judicially, and determine that he was not a marshal; for he would be in no better attitude than one who came with no commission at all. But when he appears with a commission of the president of the United States, under the great seal of the United States, that seal imports, *prima facie,* a rightful appointment so far as concerns the duty, I wish carefully to say, of any functionary authorized to take his bond, and administer the oath of office. Beyond this I express no opinion as to the import of the commission.

If we consider the probable or possible effect of the refusal of the district judge to qualify the president's appointee, the impotence of the refusal, so far as it can serve any useful purpose, becomes more plain. Besides the doubts already indicated whether a *mandamus* would lie, or whether, if it do, any court has power to issue it, there

is quite a strong probability that the *mandamus*, if available, would not bring the question under any judicial scrutiny, because it would not involve the right or title of the appointee to the office. *U. S.* v. *Guthrie*, 17 How. 301. But see *Ex parte Hennen*, 13 Pet. 230. The only proper subject of inquiry would probably be whether there was any defect in the *prima facie* right created by the commission, and behind that no court would attempt to go.

But if the *mandamus* be not available, then the excluded applicant would be without remedy, unless the impeachment of the judge could be called a remedy, until congress could confer the power to qualify him upon some more reasonable official. Meantime, the duties might go undischarged; for, although the circuit justice, under Rev. St. § 793, may fill *vacancies* in the office of marshal, it would be doubtful if the refusal to qualify the president's appointee would of itself produce such a condition of affairs as would authorize action under that section. It is my opinion that whether the district judge refuses to qualify the president's appointee or not should have no influence on the action of the circuit justice in the matter. If the applicant be qualified, it does not add anything to his right or title to the office; and if the president have no power under the constitution—and it is purely a constitutional question—to make the appointment, the vacancy would still exist, which the circuit justice is required to fill.

If the district judge qualify the president's appointee, it might induce the circuit justice to withhold any action, since he finds a person in the actual discharge of the duties; but, if he refuse to qualify him, it does not follow that the circuit justice would any more readily act in the premises, because it does not relieve the situation of the necessity of the circuit justice deciding whether he has power to fill the vacancy. The only possible useful purpose, therefore, in refusing qualification, would be to invite the circuit justice to consider and determine his powers and duty in the premises, by removing the cause he might find for non-action in the *de facto* (if it be so) incumbency of the president's appointee. I shall certainly not feel authorized to withhold qualification to the extent of the embarrassment of the circuit justice in that matter; nor, on the other hand, to the extent of embarrassing the person holding the president's commission in any contest he may have with an appointee of the circuit justice either in respect of his right or possession.

I have, under the circumstances, therefore, invited a conference with the circuit justice and the circuit judge, so that we may mutually determine what is best to be done for the public service.

———————

HAMMOND, J. Having briefly telegraphed the facts to Mr. Justice WOODS, and asked a conference with him and the circuit judge, he replied as follows:

v.28F.no.8—29

"WASHINGTON, D. C., August 26, 1886.

"*Hon. E. S. Hammond, U. S. Judge, Memphis, Tennessee:* In my opinion, president had power to make appointment. See *In re Farrow and Bigby,* 4 Woods, 491, [S. C. 3 Fed. Rep. 112.]      W. B. WOODS, Justice."

Whereupon I forwarded his telegram to Mr. Circuit Judge JACKSON, with a copy of the foregoing views of my own, asked his advice whether to urge a conference and argument, and for his opinion as to the president's authority and my own duty in the premises, to which the following reply was received:

"NASHVILLE, TENNESSEE, August 28, 1886.

"*Hon. E. S. Hammond, Memphis, Tennessee*—MY DEAR JUDGE: Your note of the twenty-sixth instant inclosing draft of your views in the matter of the marshalship, and his right to be qualified, was received last night. I have not seen the case referred to by Judge WOODS in his dispatch, viz., *In re Farrow and Bigby,* 4 Woods, 491, [S. C. 3 Fed. Rep. 112,] which seems to control his opinion that the president has the right to make the appointment in question. The vacancy having occurred *during the session of the senate,* I do not think the president has the authority, under the constitution, to fill it *during the recess of the senate.* I examined the question with some care while the Edmunds resolutions were under discussion, and then reached the conclusion, supported by the undoubted weight of authority, that the president had no power to make a temporary appointment in cases like the present; the vacancy not happening during the recess of the senate. The question is an important one, and should be definitely settled by the supreme court. How to raise it *judicially* is the difficulty. I agree with you in thinking that the duty imposed upon the district judge to qualify the marshal (approve his bond, and administer to him the oath of office) does not enable you to institute *sua sponte* an inquiry into the regularity of the appointment. The validity of his appointment is a judicial question, which must be raised by some one questioning the appointment. This could be raised by an appointee of the circuit justice under section 793 of the Revised Statutes, if the circuit justice should choose or think proper to make an appointment under that section, on the theory that Yancey held under no valid appointment. Yancey's qualification would in no way affect the case in that event. The question of the validity of the appointment might perhaps be raised in some other manner. Judge CADWALADER allowed it to be raised by the retiring officer, occupying the position Freeman now does. But, unless Yancey's right or title to the office is in some way questioned, and in some mode so as to make it the subject of *judicial* inquiry, I do not see how you can properly decline to qualify him, or to act on his bond, and, if that is satisfactory, administer to him the oath of office. I think, in an important question like this, which involves the regularity of service of process, and the rights of individuals and the public, you did right in suggesting or proposing a conference with the circuit justice and circuit judge.

"Yours, truly,          HOWELL E. JACKSON."

The telegram from the circuit justice settles that he will not undertake to exercise any power of appointment under Rev. St. § 793, since it is his opinion that the president has the power to make this appointment. This relieves me of any embarrassment in that direction, and, of course, amounts to an advice from him that I should qualify Yancey. Whether this determination of the circuit justice be a *judicial* decision or not, he has, whatever the character of his

function in that behalf may be, the responsibility of determining if a state of facts exists requiring him to make an appointment, and it is a *practical* construction of the constitution and statutes in favor of the president's power in the premises, and furnishes to me an additional support for declining to question it by a refusal to qualify the applicant.

And, while it is apparent that the circuit judge holds a contrary opinion as to the power of the president, he concurs in the conclusion I had reached to qualify the appointee. It may be remarked here that a similar question as to the presidential power of appointment was sought to be raised in *Re Marshalship of Alabama*, 20 Fed. Rep. 379, by the motion of a claimant "to be recognized and held by the courts as now entitled to assume the duties of that office." But it is doubtful if the court or its judges can, by recognition or non-recognition of an officer, *adjudicate* the constitutional question involved in any objection to these appointments by the president.

The case referred to by the circuit justice was a decision made by him while circuit judge. *Re Farrow*, 4 Woods, 491; S. C. 3 Fed. Rep. 112. It might be challenged, as the opinion of Judge CADWALADER might, as not being an authoritative *adjudication* of the point, for I am not aware of any federal statute, such as the states sometimes have, authorizing *agreed* cases to be submitted to a court; but, beyond that, Chief Justice MARSHALL held in *Wallace* v. *Anderson*, 5 Wheat. 291, that *quo warranto* to try the title to an office could not be maintained but at the instance of the government, and that consent of parties will not give jurisdiction in such a case; which doctrine was affirmed in *Nebraska* v. *Lockwood*, 3 Wall. 236. It may be doubtful, therefore, whether the agreement of Farrow and Bigby to submit their rival claims to the court or judge was anything more than an arbitration of them. This only emphasizes the difficulty pointed out by Judge CADWALADER of ever having, in the present state of our federal legislation, any direct judicial adjudication of the point.

The remedy by *quo warranto*, or upon an information in that nature, may not be available, any more than the *mandamus*, since the jurisdiction conferred by Rev. St. sec. 563, subsec. 14; Id. sec. 629, subsec. 14; and Id. sec. 1786,—is limited to a particular class of cases not embracing this; and since that limitation may exclude any broader jurisdiction that might be claimed under the general power of the courts to issue writs to enforce any jurisdiction granted to them, (Rev. St § 716,) if, indeed, any jurisdiction to directly try the title to federal offices by *quo warranto* or other like proceeding has been conferred upon any federal court,—they being destitute of all common-law jurisdiction in that regard, as every other. The question may arise some time in the way of contestation over private rights involved, and may be then authoritatively decided. The opinion of Mr. Circuit Justice WOODS in the *Farrow Case* gives a force of authoritative decision to the opinions of the attorneys general, which is de-

nied by Judge CADWALADER because of a tendency to thereby perpetuate an abuse of executive power; for, if the courts recognize executive decision and 'practice as authoritative on them in construing the constitution, they may. abdicate one of their most important duties, and loosen their power to check all violations of the constitution by any department of the government, legislative, executive, or judicial. Of course, it cannot be questioned that the practice of the government in all its departments, and the opinions of eminent publicists and jurists, whether official or otherwise, and whether technically authoritative on the courts or not, are entitled to the consideration of the courts in construing the constitution; but care should be used not to go beyond the limits of their just weight in that behalf.

These remarks are made to strengthen my conclusion to limit my own action, as a district judge proceeding to exercise the power conferred by Rev. St. §§ 782, 783, within the narrow bounds to which it belongs, and not to attempt to *decide* this grave question of constitutional construction by either qualifying, or refusing to qualify, the president's appointee. There are criminal penalties prescribed by the legislation of congress designed to protect against executive abuses of this power of appointment; and, if they be unavailable by reason of executive control over prosecutions, the ultimate remedy may be in the independence of grand juries from any such determent. The courts or judges should not undertake any duty in that direction not strictly belonging to them.