Morton M. **LAPIDES**, Gilbert B. **Redmond**, Harry J. **Conn** and Allegheny Pepsi-Cola Bottling Company, Plaintiffs,

v.

W. B. **DONER**, Robert S. Gordon, Fred Deutsch, Richard H. Sucher, Gerald Schwartz and D W G Cigar Corporation, Defendants.

Civ. A. No. 27191.

United States District Court
E. D. Michigan, S. D.

Dec. 9, 1965.

Hudson Mead, MacFarlane, Tolleson, Burgess & Mead, Detroit, Mich., Harvey J. Fried, of counsel, Blum, Haimoff, Gersen & Szabad, New York City, for plaintiffs.

Nathan B. Goodnow, Dykema, Wheat, Spencer, Goodnow & Trigg, Detroit, Mich., Leon Silverman, Strasser, Spiegelberg, Fried & Frank, New York City, for defendants.

FREEMAN, District Judge.

In this diversity action by three individual directors and a corporate minority stockholder in the defendant, D W G CIGAR CORPORATION, an Ohio corporation, against five individual directors of the Cigar Corporation and the Corporation itself, plaintiffs seek a declaration that a meeting of the board of directors of the D W G Cigar Corporation on July 23, 1965, and all resolutions adopted at that meeting, are null and void. These resolutions included the election of defendant Doner to the board, the removal of plaintiff Lapides as chairman of the board and chairman of the executive committee, the removal of plaintiff Redmond as vice-chairman of the board, the reduction of the membership of the executive committee to three persons by removal of plaintiff Redmond from the committee, the election of defendant Gordon as chairman of the board, and the replacement of counsel for the corporation. Plaintiffs seek a determination that Lapides remain as chairman of the board and chairman of the executive committee, that Redmond remain as vice-chairman of the board and a member of the executive committee, that Gordon's election as chairman of the board and executive committee be set aside, and that the individual defendants be enjoined from exercising the powers of the offices purportedly conferred at the meeting on July 23, 1965. Essentially then, the action involves a determination of control of the Corporation's board of directors and executive committee.

The case is now before the Court on defendants' motion to dismiss. The first ground, upon which defendants appear to rely most strongly, and which is discussed in a large portion of the extensive and excellent briefs filed by both parties, is that this Court, under the doctrine of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), is obliged in this diversity case to follow the law of Michigan as expressed in Wojtczak v. American United Ins. Co., 293 Mich. 449, 292 N.W. 364 (1940), that the Michigan courts will not assume jurisdiction over a case such as this one, which is said to involve the exercise of control or management of the internal affairs of a foreign corporation.

In Wojtczak, the plaintiff alleged that a reinsurance contract entered into by defendant Insurance Corporation, incorporated under the laws of Indiana and having its headquarters and principal place of business in Indianapolis, was an *ultra vires* contract, in violation of the defendant Company's bylaws. The Court stated categorically:

"If the restraint sought undertakes to exercise control or management of the internal affairs of defendant, a foreign corporation, the courts of this State will not assume jurisdiction. This rule is in line with authority."

In determining whether the case involved the control and management of internal affairs of a foreign corporation, the Court quoted from the Maryland case of North State Copper & Gold Mining Co. v. Field, 64 Md. 151, 20 A. 1039, as follows:

"That, where the act complained of affects the complainant solely in his

capacity as a member of the corporation, whether it be as stockholder, director, president, or other officer, and is the act of the corporation, whether acting in stockholders' meeting, or through its agents, the board of directors, then such action is the management of the internal affairs of the corporation, and, in case of a foreign corporation, our courts will not take jurisdiction."

Under such a test it appears clear, and plaintiffs do not contest the point, that the relief herein sought does involve the control and management of internal affairs of a foreign corporation. Therefore, it would seem that if this Court were to follow the Michigan rule stated in Wojtczak, it would be obliged to decline jurisdiction of the instant case.

Plaintiffs contend that the holding in Wojtczak does not represent a rule of substantive law binding on this Court, but rather an application of the doctrine of *forum non conveniens* to the particular facts of that case. Plaintiffs further contend that the application of the Michigan doctrine of *forum non conveniens* in the instant case would require this Court to exercise its jurisdiction rather than dismiss or transfer the case, because, it is argued, this Court is located in the most convenient state to resolve the issues in view of the parties and subject matter involved. Additionally, plaintiffs assert that the Michigan *forum non conveniens* doctrine is not binding on this Court, and, hence, this Court is free under the Federal doctrine of *forum non conveniens* to assume jurisdiction over this case as the Court located in the most convenient forum for the parties.

Plaintiffs argue that in Wojtczak, the Michigan Supreme Court had the *power* to assume jurisdiction over a foreign corporation, but that it exercised *discretion* not to do so on the particular facts above-mentioned. However, plaintiffs argue that in this case the Court should exercise discretion to assume jurisdiction, since the defendant corporation, unlike the defendant foreign corporation

in Wojtczak, has its principal place of business in Michigan.

This Court recognizes that the opinion in Wojtczak contains no analysis of the relative convenience to the parties of the possible forums. The Michigan Court did not mention the term *forum non conveniens,* and did not refer to the concepts of discretion or convenience of the parties. Nor did the Court discuss any facts which would bear on which forum would be most convenient for the parties. Indeed, the Court quoted language from Fletcher on Corporations to the effect that courts ordinarily decline jurisdiction over cases involving internal affairs of foreign corporations "even though the corporation may be doing business in the state or country and may have expressly or impliedly agreed to submit to the jurisdiction of the court in suits against it, and has a substantial portion or even all of its tangible property in the state and is for all practical purposes a local corporation except as to the place of its creation." Such language tends to indicate that the Court in Wojtczak declined jurisdiction without regard to the convenience of the forum for the parties concerned.

However, the Court in Wojtczak also quoted from Fletcher on Corporations as to the reasons for declining jurisdiction, namely the necessity of applying foreign law and the possible inability of the Court to enforce any judgment it might render against the foreign corporation in such a case. It appears that the Michigan Supreme Court recognized that it had jurisdiction in the sense of power to hear the case, but that it chose in its discretion not to assume jurisdiction for the reasons stated.

It is well recognized that the rule declining jurisdiction over controversies relating merely to the internal management of foreign corporations " * * * is not strictly one of jurisdiction, but rather of discretion in the exercise of jurisdiction, and of convenience and expediency rather than power, the purpose of the rule being the protection of the foreign corporation." [20]

C.J.S. Corporations § 1879. The problem of exercising discretion to assume or decline jurisdiction presented the Court in Wojtczak with a question within the broad general area of the law of *forum non conveniens*. However, the Court did not exercise its discretion on the basis of all the factors normally taken into account in *forum non conveniens* cases, but chose instead to adopt a rule for the exercise of discretion which takes into account only two such factors, the place of incorporation and the nature of the suit. Under such a rule, once it is established that the corporation involved is in fact a foreign corporation, i. e., one not incorporated in Michigan, and that the suit concerns the control and management of its internal affairs, the inquiry is at an end and jurisdiction must be declined. This does not mean that the Michigan courts have no jurisdiction over such a suit in the first place, as defendants seem to imply in their argument, but rather that the Michigan Supreme Court has laid down a rule in the exercise of its discretion that jurisdiction will not be assumed when such is the case. Thus, the rule announced in Wojtczak appears to be a Michigan rule of *forum non conveniens* in the limited class of cases involving control and management of the internal affairs of foreign corporations.

It must be noted that the Wojtczak case was briefed on appeal as a *forum non conveniens* case by both sides and submitted as such to the Michigan Supreme Court. Further, the case primarily relied on by the Court in support of its holding, Rogers v. Guaranty Trust Co., 288 U.S. 123, 53 S.Ct. 295, 77 L.Ed. 652 (1933), must be considered a *forum non conveniens* case by its own language. The Supreme Court stated in Rogers (p. 131, 53 S.Ct. p. 298):

"Obviously no definite rule of general application can be formulated by which it may be determined under what circumstances a court will assume jurisdiction of stockholders' suits relating to the conduct of in-

ternal affairs of foreign corporations. But it safely may be said that jurisdiction will be declined whenever considerations of convenience, efficiency, and justice point to the courts of the state of the domicile as appropriate tribunals for the determination of the particular case."

Mr. Justice Cardozo, in dissent, added (p. 151, 53 S.Ct. p. 305):

"The doctrine of *forum non conveniens* is an instrument of justice."

Counsel for the defendant foreign corporation in Wojtczak quoted and stressed the above language from the majority opinion in Rogers in defendant's brief on appeal.

Two other cases lend further support to this Court's conclusion that the rule in Wojtczak may properly be characterized as a state rule of *forum non conveniens*. In Williams v. Green Bay & Western Railroad Co., 326 U.S. 549, 66 S.Ct. 284, 90 L.Ed. 31 (1946), the Supreme Court characterized the similar New York rule that the courts will not assume jurisdiction over cases involving the internal affairs of a foreign corporation, as a "local rule of forum non conveniens." Since the New York rule, as it was applied in the case of Weiss v. Routh, 149 F.2d 193, 159 A.L.R. 658 (CA2, 1945), and characterized by the Supreme Court in the later Williams case, is similar to the Michigan rule as stated in Wojtczak, it seems clear that the Supreme Court would also regard the rule in Wojtczak as a local rule of *forum non conveniens*. Further, in Willis v. Weil Pump Co., 222 F.2d 261 (1955), the Second Circuit Court of Appeals characterized as "a state rule of forum non conveniens" the refusal of New York courts to assume jurisdiction in the analogous case of suits between nonresidents relative to a tort occurring outside New York.

Defendants contend that the rule in Wojtczak is also codified in the Michigan Corporation Code, 15 M.S.A. § 21.95,

Comp.Laws 1948, § 450.94, which reads in part:

"Nothing in this act shall be construed to authorize the regulation of the organization or internal affairs of any foreign corporation heretofore or hereafter admitted to this state."

However, this act is inapposite in that it clearly refers to regulation of foreign corporations by the Michigan Corporation and Securities Commission, and not by the Courts.

Defendants further contend that the rule in Wojtczak is a binding rule of jurisdiction rather than venue, because in Michigan the issue of *forum non conveniens* must be raised on a motion for a change of venue rather than a motion to dismiss, citing Herpolsheimer v. A. B. Herpolsheimer Realty Company, 344 Mich. 657, 75 N.W.2d 333 (1956). Such a contention overlooks the fact that Michigan courts have statutory authority to transfer cases only to courts in other counties within the state of Michigan, and not outside the state. C.L.1948, § 610.2.

Although the rule in Wojtczak is simply a rule of venue rather than jurisdiction in the strict sense, it is nevertheless a rule of Michigan law, which this Court would be bound to apply if required to follow Michigan law on the subject. The primary issue before the Court, therefore, is whether the Court in this diversity case is required by the Erie doctrine to follow the rule of law in Michigan, as announced in the Wojtczak case, in determining whether to assume jurisdiction of this litigation.

■ It must be noted initially that the Erie case itself does not dictate a clear result on this issue. As the Supreme Court stated in the recent case of Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), the Erie case " * * * held that federal courts sitting in diversity cases, when deciding questions of 'substantive' law, are bound by state court decisions as well as state statutes. The broad command of Erie was therefore identical to that of the Enabling Act: federal courts are to apply state substantive law and federal procedural law." Under the Erie doctrine, therefore, this Court is obliged to follow the rule in Wojtczak only if it can properly be characterized as a rule of substantive rather than procedural law. The Erie case itself does not give any definite indication whether the particular rule in Wojtczak should be considered substantive or procedural. Mr. Justice Brandeis stated in Erie that "Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State." In characterizing the rule in Wojtczak as either substantive or procedural, this Court must look beyond Erie to subsequent cases and Acts of Congress, and also apply common sense to the particular facts here involved.

Defendants state that the leading Federal case on the question is Weiss v. Routh, supra, 149 F.2d 193 (CA 2, 1945), (opinion by Judge Learned Hand). In Weiss, the Court held that the Erie doctrine required it to follow state law refusing to assume jurisdiction over a case involving the internal affairs of a foreign corporation. In support of its holding, the Court contended, first, that unless it followed state law, the decision to accept or refuse jurisdiction would appear not to be controlled by any principle and would be at the judge's whim, without any limits or guidelines for the exercise of discretion. Secondly, the Court contended that it should follow state law because the purpose of the Erie doctrine was that the accident of citizenship should not change the outcome of litigation if brought in Federal Court rather than state court.

With respect to the first contention, it can no longer be said, as Judge Hand did in Weiss, that a Federal Court must follow state law to decline jurisdiction in cases involving internal affairs of foreign corporations or else be left without guidelines for discretion to take jurisdiction or not. The Supreme Court in the subsequent cases of Williams v. Green

Bay & Western Railroad Co., supra, 326 U.S. 549, 66 S.Ct. 284, 90 L.Ed. 31 (1946), and Koster v. Lumbermens Mutual Casualty Co., 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947), expressly laid down guidelines for Federal Courts to follow regarding the assumption of jurisdiction in cases involving the internal affairs of foreign corporations.

Thus, the Court in Williams stated:

"We mention this phase of the matter to put the rule of *forum non conveniens* in proper perspective. It was designed as an 'instrument of justice.' Maintenance of a suit away from the domicile of the defendant—whether he be a corporation or an individual—might be vexatious or oppressive. An adventitious circumstance might land a case in one court when in fairness it should be tried in another. The relief sought against a foreign corporation may be so extensive or call for such detailed and continuing supervision that the matter could be more efficiently handled nearer home. The limited territorial jurisdiction of the federal court might indeed make it difficult for it to make its decree effective. But where in this type of litigation only a money judgment is sought, the case normally is different. The fact that the claim involved complicated affairs of a foreign corporation is not alone a sufficient reason for a federal court to decline to decide it. * * * Each case turns on its facts."

The Court in Williams also noted (326 U.S. p. 558, 66 S.Ct. p. 289):

"It was held in Weiss v. Routh, 2 Cir., 149 F.2d 193, that a federal court in a diversity case was required by Erie R. Co. v. Tompkins, supra, to apply the local rule of *forum non conveniens*. We reserve decision on that question. For even if we assume the New York rule to be applicable here, we would reach no different result."

The actual holding of the Court in Williams was that under the facts of the case, it would not be vexatious or oppressive to entertain suit against a Wisconsin corporation in the Federal District Court in New York, and that the District Court should not have declined to hear and decide the case, even though it involved the internal affairs of a foreign corporation.

In Koster, supra, the Court stated (330 U.S. p. 527, 67 S.Ct. p. 833):

"There is no rule of law, moreover, which requires dismissal of a suitor from the forum on a mere showing that the trial will involve issues which relate to the internal affairs of a foreign corporation. That is one, but only one, factor which may show convenience of parties or witnesses, the appropriateness of trial in a forum familiar with the law of the corporation's domicile, and the enforceability of the remedy if one be granted. But the ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice. Under modern conditions corporations often obtain their charters from states where they no more than maintain an agent to comply with local requirements, while every other activity is conducted far from the chartering state. Place of corporate domicile in such circumstances might be entitled to little consideration under the doctrine of *forum non conveniens*, which resists formalization and looks to the realities that make for doing justice."

In Koster, as in Williams, the Court concluded that the New York rule would require no different result, stating (p. 529, 67 S.Ct. p. 834):

"Since this case is pending in New York and is a diversity case, it is appropriate to observe that the law of New York, if applicable, is to the same effect as to the considerations to govern *forum non conveniens* questions in this class of cases."

The Court merely held that a Federal District Court could refuse to exercise its jurisdiction in a case where the forum that plaintiff chose was so vexatious for defendant and of so little benefit for plaintiff as to be an unsuitable forum to decide the controversy.

The significant point is that the Supreme Court in both the Williams and the Koster cases established certain guidelines for the exercise of discretion to accept or refuse jurisdiction in cases involving internal affairs of foreign corporations. It was suggested, for example, that the courts should look to see whether a suit outside the corporate domicile would be vexatious or oppressive, or whether the litigation would be effectively supervised by a court outside the corporate domicile, or whether such a court would have jurisdiction over all the parties or would be convenient for all the witnesses. In light of Williams and Koster, therefore, it can no longer be argued, as Judge Hand did in the earlier Weiss case, that a Federal Court must either follow state law or be left without guidelines or limits for discretion to accept or refuse jurisdiction in cases involving internal affairs of foreign corporations. The thrust of Williams and Koster is that such cases are to be considered on well known *forum non conveniens* principles of convenience, efficiency and justice.

In Weiss v. Routh, supra, the Court also contended that it should follow state law because the accident of diversity should not change the outcome of a suit by giving a different result in the Federal Court than in the state court. This "outcome determination" approach was discredited in the recent case of Hanna v. Plumer, supra, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), which held that Federal rule 4(d) (1) rather than state law governed service of process in a diversity case, even though the effect of the holding was to give a different result in Federal Court than in state court. The Supreme Court stated (p. 466, 85 S.Ct. 1136): " 'Outcome-determination' analysis was never intended to serve as

a talisman," and pointed out that *every* variation between state and Federal law is in a sense outcome-determinative. The Court refused to follow the analysis to its logical conclusion that state law must be applied in every case. Since the Court in Hanna was obliged to do no more in support of its holding than to reaffirm the Erie doctrine that Federal Courts follow only state *substantive* law, the Court's rejection of "outcome-determination" analysis is especially significant.

It seems clear that if Judge Hand had had before him the Williams, Koster and Hanna cases when Weiss v. Routh was decided, the Court would probably not have felt compelled to follow state law declining jurisdiction. In any event, this Court does not feel compelled to follow Weiss v. Routh, in light of the Williams, Koster and Hanna cases.

In support of their argument that this Court should follow Weiss as the leading Federal case, defendants rely on the fact that in both Williams and Koster, the Supreme Court expressly reserved decision on the precise question decided earlier in Weiss, i. e., whether the Federal Courts were obliged to follow the state rule of *forum non conveniens* in a diversity case. However, in both Koster and Williams, the Supreme Court gave strong indications that if it were compelled to decide the question, it would hold that Federal Courts are not obliged to follow a state rule declining jurisdiction in cases involving internal affairs of foreign corporations. Thus, the Court in Williams stated (326 U.S. p. 556, 66 S.Ct. p. 288): "The fact that the claim involves complicated affairs of a foreign corporation is not alone a sufficient reason for a federal court to decline to decide it." Further, in Koster, the Court stated: "There is no rule of law, moreover, which requires dismissal of a suitor from the forum on a mere showing that the trial will involve issues which relate to the internal affairs of a foreign corporation." The Court in both cases clearly rejected the general principle that jurisdiction must be declined in cases

involving the internal affairs of foreign corporations. Having rejected the general principle, the Court only then went on to note in both cases that state law, *if applicable*, would not require any different result. But if the Court had felt compelled to follow state law, the proper procedure would have been to discuss state law first and apply it rather than to discuss the general principle first and then note parenthetically that state law would lead to the same result. The court's reservation of decision as to whether state law governed in Williams and Koster hints strongly that the Court did not consider itself bound to follow state law on the question.

Further, there is a serious question whether state law did, in fact, point to the same result as the Court reached, at least in the Williams case. Both Williams and Koster involved suits against foreign corporations in the Federal District Court of New York, and therefore the law of New York was the relevant state law in both cases. In Koster, the Court quoted the following language from Langfelder v. Universal Laboratories, 293 N.Y. 200, 204, 56 N.E.2d 550, 155 A.L.R. 1226;

"But it is well settled that jurisdiction in any case will be declined either in the absence of jurisdiction in the strict sense or where a determination of the rights of litigants involves regulation and management of the internal affairs of the corporation dependent upon the laws of the foreign State * * *."

Moreover, Judge Hand in the Weiss case stated the New York rule as follows:

"When a trial involves the 'internal affairs' of a corporation, the rule is that the courts of a foreign forum will not assume jurisdiction over it * * *."

Yet in Williams, the Supreme Court held that it was error for the District Court to decline jurisdiction under the circumstances of the case simply because the subject matter was concerned with the internal affairs of a foreign corporation. Thus, the holding in Williams appears to conflict with the rule in New York as stated in Langfelder and Weiss, and the Court's statement in Williams that the New York rule would require no different result cannot be read uncritically. The Court in Williams at least minimized and arguably ignored state law in reaching its desired result.

In Koster also there is some conflict between the Court's actual holding and the relevant state law as quoted in Langfelder and Weiss. The Court in Koster only held that a Federal District Court could properly refuse jurisdiction in a case where plaintiff's choice of forum involved harassment of defendant without countervailing benefit to the plaintiff. Thus the Court in Koster based its holding on a much narrower ground than the state law quoted from Langfelder and Weiss that jurisdiction would be declined whenever the case involved internal affairs of a foreign corporation. By restricting its holding to a narrower ground than the state law, the Court in effect refused to apply state law, although the actual application of state law would not have led in the particular case to a different result.

In the opinion of this Court, the implication of the Williams and Koster cases is that the Supreme Court does not consider a Federal District Court bound to apply a rule of state law that jurisdiction will be declined in cases involving internal affairs of foreign corporations. In neither Williams nor Koster did the Supreme Court itself apply such a rule, and in both cases the Court expressly rejected the idea of such a rule as not being consistent with *forum non conveniens* principles. In both cases, the Supreme Court expressed an awareness that state law might well be applicable under the Erie doctrine, but refused to so hold. There is, therefore, good reason to believe that the Supreme Court does not consider the rule of state law expressed in Langfelder and Weiss and also in Wojtczak as a rule of substantive law binding on Federal

Courts under the Erie doctrine in diversity cases.

There is further good reason why this Court does not feel bound to follow Judge Hand's decision in Weiss v. Routh declining jurisdiction over a foreign corporation. As already noted, the New York rule in Weiss was characterized by the Supreme Court in Williams as a local rule of *forum non conveniens*. Under such a characterization, which this Court has also chosen to adopt, the rule in Weiss, and the similar Michigan rule as announced in the Wojtczak case, would fall within an area of the law of venue now governed in the Federal Courts by an Act of Congress enacted subsequent to the 1945 decision in Weiss.

Chapter 87 of Title 28, United States Code, relating to venue in the Federal District Courts, was adopted in 1948 by Congress. Section 1404(a) of this chapter provides:

> "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

■ The case of Norwood v. Kirkpatrick, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955), cited by defendants, makes it clear that the general area of *forum non conveniens* law is now governed in Federal Courts by § 1404(a), which codified and revised existing law to permit the Federal Courts to exercise an even broader discretion than previously the law had allowed. See 1A Moore's Federal Practice ¶0.317 [2], p. 3533.

■ It must be noted also, as plaintiffs point out, that 28 U.S.C. § 1401, applicable to stockholders' derivative actions, provides that "Any civil action by a stockholder on behalf of his corporation may be prosecuted in any judicial district where the corporation might have sued the same defendants." This action may properly be considered as a stockholders' derivative suit under Rule 23(b) once the complaint has been verified by oath as the rule requires. If such action is

taken, then venue would appear to be proper in Michigan under Section 1401, since the D W G Cigar Corporation could clearly sue the same defendants in Michigan.

■ The Court in Erie held that Federal Courts in diversity cases must apply state law "except in matters governed by the Federal Constitution or by acts of Congress." Since questions of *forum non conveniens* are now governed in the Federal Courts by an Act of Congress, Section 1404(a), and possibly also Section 1401 in this particular case, it follows that the Erie doctrine does not require the Federal Courts to follow state rules of *forum non conveniens* in diversity cases.

In Willis v. Weil Pump Co., 2 Cir., 222 F.2d 261 (1955), cited by plaintiffs, the Second Circuit Court of Appeals reached the same conclusion in a case where defendant had moved to dismiss a tort suit for improper venue on the ground that New York courts would not entertain suits between nonresidents relative to a tort occurring outside New York, and that the District Court sitting in New York in such a diversity case was therefore also bound to decline jurisdiction. The Court of Appeals, in holding such a contention "untenable" stated:

> "The refusal of the New York courts to deal with such a suit is but a state rule of forum non conveniens. Such a rule does not control a federal court, since Congress has explicitly legislated in that field, 28 U.S.C. § 1404(a), and it involves federal procedure."

Further, in Gilbert v. Gulf Oil Corp., 153 F.2d 883, 170 A.L.R. 319 (CA2, 1946), decided shortly after Weiss v. Routh and before the enactment of section 1404(a), the Second Circuit Court of Appeals, speaking through Judge Clark, held that the Federal Courts are not obliged to follow state doctrines of *forum non conveniens*. Although the Supreme Court reversed the Gilbert case on other grounds in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), the Court refused to

overrule the Court of Appeals' conclusion that Federal Courts are not bound by state doctrines of *forum non conveniens*. Since the result in the particular case would have been the same whether or not the state law of *forum non conveniens* was applied, the Supreme Court in Gilbert once again avoided the question, as it had previously done in Williams and Koster.

Also, Moore states in Volume 1A of Federal Practice ¶0.317 [2] at page 3534:

"While inconsistent positions have been taken by the lower courts in relation to forum non conveniens, this doctrine is but a facet of venue. Because of that, because the doctrine affects the trial convenience of the federal courts and their dockets, and because of the mobility of the federal judiciary on a national scale, they should be independent of state doctrines of forum non conveniens, fashioned for courts operating on a state scale. Forum non conveniens is procedural and the new Code so treats it. Erie R. Co. v. Tompkins does not require conformity by the federal courts to the practice of the states in this matter."

The case of Parsons v. Chesapeake & O. R. Co., 375 U.S. 71, 84 S.Ct. 185, 11 L.Ed. 2d 137 (1963), gives further support to this Court's conclusion that Federal Courts need not follow state rules of *forum non conveniens* in diversity cases under the Erie doctrine. The Court in Parsons stated (p. 73, 84 S.Ct. p. 187):

"Since different factual considerations may be involved in each court's determination, we hold that a prior state court dismissal on the ground of *forum non conveniens* can never serve to divest a federal district judge of the discretionary power vested in him by Congress to rule upon a motion to transfer under § 1404(a)."

It is true that Parsons was not a diversity case, but the use of the word "never" in the Court's holding suggests that the holding might be the same in such a case. Certainly the reasoning underlying the Court's holding in Parsons would also apply in diversity cases. Different factual considerations such as those mentioned by the Supreme Court in Parsons might well be involved in each Court's determination in diversity cases as well as in nondiversity cases.

█ Since this Court has concluded, first, that the rule in Wojtczak is a state rule of *forum non conveniens*, .and, secondly, that Federal Courts are not obliged under the Erie doctrine to apply state rules of *forum non conveniens* in diversity cases, it follows that the Erie doctrine does not require this Court to apply the Michigan rule as stated in Wojtczak.

In support of their position that this Court must follow Wojtczak under the Erie doctrine, defendants rely on the Supreme Court cases of Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1946); Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); and Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949). In the Angel and Guaranty Trust cases, state statutes barred plaintiffs' suits in the state courts based on the law of the forum and plaintiffs, therefore, had no substantive rights under forum law which they could expect to enforce in Federal Court. In the instant case, no Michigan statute cuts off any substantive rights plaintiffs might otherwise have under Michigan law. As the Second Circuit Court of Appeals stated in Willis v. Weil Pump Company, supra, 222 F.2d 261 (1955):

"Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832, is not apposite, since there the state had a substantive policy of refusing to grant a deficiency judgment."

In Woods, a Mississippi statute barred a foreign corporation doing business in the state from bringing any action in state courts if the corporation had not registered a local agent for service of process. The rationale of the state statute was a public policy designed to encourage for-

eign corporations to qualify before doing business in the state. The policy underlying the Michigan rule relates entirely to procedure in the state courts for considering such cases, but the policy underlying the Mississippi statute also relates directly to the regulation of foreign corporations, apart from procedure in the Mississippi courts. Thus Angel, Guaranty Trust and Woods are distinguishable because each involves questions of state substantive law and policy which Federal Courts would be obliged to follow under the Erie doctrine.

Defendants also rely on previous decisions of this Court and also of the Sixth Circuit Court of Appeals holding that jurisdiction in diversity cases is determined by state law. However, the instant case does not involve a problem of jurisdiction in the strict sense, but a question of discretion to assume or refuse jurisdiction.

Common sense dictates the retention of jurisdiction in the case at bar despite the rule in Wojtczak. In the instant case, unlike Wojtczak, the headquarters of the foreign corporation is in Michigan, the transactions giving rise to the suit all occurred in Michigan, and all the defendants reside in Michigan. There is, therefore, no problem of jurisdiction or power adequate to the enforcement of any decrees the Court might issue. Further, it appears that the present forum is clearly the most convenient forum for defendants, and in this case, unlike Wojtczak, the questions of foreign law do not appear particularly complicated. Also, the remedy for plaintiffs in Ohio does not seem adequate, as will be discussed below, in view of the limited scope of quo warranto relief under Ohio law and the probable inability of Ohio courts to obtain jurisdiction over the individual defendants residing in Michigan. The Court in Wojtczak, as already pointed out, reduced the discretion it had under *forum non conveniens* principles to a mechanical rule, which if applied in the instant case would ignore considerations of convenience, efficiency and justice.

■■ For all of the foregoing reasons, this Court holds that it will assume jurisdiction of this case despite the language of the Michigan Supreme Court in the Wojtczak case. The Erie doctrine does not appear to require this Court to follow Wojtczak in light of the Williams and Koster cases and section 1404(a), and there is certainly no other compelling reason to do so. Complete relief is available in this forum if merited, and a trial in this Court should resolve the case in the most convenient and expeditious manner for all concerned. Moreover, if section 1404(a) governs questions of *forum non conveniens* law in diversity cases, it is clear that a motion to dismiss is no longer a proper method of raising an issue of *forum non conveniens*, which, under section 1404(a), can only be determined on a motion to transfer the case to any other district or division where it might have been brought. Collins v. American Automobile Insurance Company, 230 F.2d 416, 418 (CA2, 1956). In the instant case, such a motion under section 1404(a) to transfer the case to Ohio would be unavailing to defendants because the action could not have been brought in Ohio originally against the individual defendants, who live in Michigan, and are therefore not subject to service of process in Ohio. Hoffman v. Blaski, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960). The requirements of section 1404(a) for a convenient forum are satisfied only in Michigan. Therefore, jurisdiction must be retained under section 1404(a), and the motion to dismiss based on Wojtczak must be denied.

[9] The second major issue raised by defendants on their motion to dismiss the complaint is that this Court has no jurisdiction over the subject matter of this litigation, since the matter in controversy does not exceed $10,000. In this connection, the Sixth Circuit Court of Appeals has stated, in Pennsylvania R. Co. v. City of Girard, 210 F.2d 437, 439 (1954):

"Jurisdiction under Title 28, Section 1331, depends 'not alone upon the pecuniary damage resulting from the

acts complained of, but also upon the value of the rights which plaintiff seeks to have protected.' Wisconsin Electric Co. v. Dumore Co., 6 Cir., 35 F.2d 555, 556. Since the suit is for injunction as well as for damages, the test is the value of the controversy. Glenwood Light & Water Co. v. Mutual Light, Heat & Power Co., 239 U.S. 121, 125, 36 S.Ct. 30, 60 L.Ed. 174."

In the instant case, where plaintiffs also seek injunctive relief as well as a declaratory judgment, the test appears to be the value of the rights which plaintiff seeks to have protected. In essence, the right which plaintiffs seek to protect in the instant case is the right to exercise control over the corporation and to protect plaintiff Allegheny Pepsi-Cola Bottling Company's $2,000,000 stock value in the corporation. It would seem, therefore, that the value of the controversy is at least the value of the plaintiffs' share of the corporation, which in this case exceeds the requisite amount in controversy many times over.

Plaintiffs cite a number of cases measuring the amount in controversy as the value of shareholders' investments where shareholders had brought actions concerning their right to vote, e. g., Harris v. Brown, 6 F.2d 922 (W.D.Ky.1925); Walsh v. Boston & M. R. R., 87 F.Supp. 934 (D.Mass.1960); Wilder v. Brace, 218 F.Supp. 860 (D.Me.1963); Textron, Inc. v. American Woolen Co., 122 F.Supp. 305 (D.Mass.1954). Defendants attempt to distinguish these cases by claiming that in the instant case the shareholders' rights to vote are not in issue. Such a contention overlooks the fact that in both the cited cases and the instant case, the essential issue is the right to control the corporation. Whether the issue is raised by a controversy over the shareholders' rights or the corporate directors' rights is only incidental to the main issue of corporate control. As the court stated in the Wilder case, supra (218 F.Supp. p. 865):

" * * * the fundamental matter in controversy here is the right to control a multi-million dollar corporation. * * * In a suit such as this, ' * * * the value of the matter in dispute * * * is the value of the property to be protected, * * * which in turn is *at least* the value of the plaintiff's share in the company, control, or partial control of which may depend upon the outcome of the election.' "

This Court is persuaded that the cases cited by plaintiffs on this issue represent good authority that the amount in controversy requirement is met in the instant case. Defendants cite no authority in support of their attempted distinction, or any cases which deal with the problem of corporate control. Kvos, Inc. v. Associated Press, 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183 (1936), and Seven-Up Company v. Blue Note, Inc., 159 F.Supp. 248 (N.D.Ill.1958), affirmed 260 F.2d 584 (CA7, 1958), cert. denied 359 U.S. 966, 79 S.Ct. 878, 3 L.Ed.2d 835 (1959), cited by defendants, hold that the amount of threatened injury to plaintiffs' business interest rather than the value of the interest per se is the amount in controversy. These cases are not concerned with questions of corporate control. However, even under such a test, it cannot be said with any assurance that the threatened injury to plaintiffs' interests sought to be prevented by this lawsuit may not exceed $10,000. There is, therefore, no need to consider further defendants' allegation of an insufficient amount in controversy.

■ Defendants also contend in support of their motion to dismiss the complaint that the instant case is essentially a suit for quo warranto relief which this Court does not have jurisdiction to try, citing, inter alia, Morin v. City of Stuart, 111 F.2d 773, 129 A.L.R. 250 (CA5, 1940); Selser v. City of Stuart, 135 F.2d 211 (CA5, 1943); and In re Yancey, 28 F. 445 (CCA6, 1886). Such a contention proceeds on the assumption that in the instant case a suit for quo warranto relief in Ohio would provide an adequate remedy. This assumption is unjustified for several reasons.

In the first place, quo warranto proceedings do not provide an adequate remedy because, under Ohio law, such proceedings can be brought only in the discretion of the attorney general or a prosecuting attorney on leave of the Court, and not as a matter of right. Ohio Revised Code Annotated, § 2733.05. Indeed, defendants vigorously argue that the Ohio Attorney General is an indispensable party to this suit under the Ohio law. As the Court stated in Toledo Traction, Light & Power Co. v. Smith, 205 F. 643, 662 (N.D.Ohio, 1913): "It would seem to us that the remedy by quo warranto is therefore not quite complete, where the party interested must appeal to the discretion of some other person or body." Further, in Columbian Cat Fanciers, Inc. v. Koehne, 68 App.D.C. 257, 96 F.2d 529, 532 (1938), the Court held quo warranto proceedings an inadequate remedy because the right to bring an action in quo warranto was not absolute. The Court stated:

"It is elementary that 'the jurisdiction of equity attaches unless the legal remedy, both in respect to the final relief and the mode of obtaining it, is as efficient as the remedy which equity would confer in the same circumstances.'"

The Court further stated:

"'Adequate remedy at law' means a remedy vested in the complainant, to which he may at all times resort at his own option, fully and freely, without let or hindrance."

A further reason why Ohio quo warranto proceedings are inadequate is that the individual defendants, who live in Michigan, are not subject to service of process in Ohio. Defendants contend that service upon nonresidents of Ohio may be obtained by publication under Ohio Revised Code § 2733.11, which provides:

"When a summons in an action in quo warranto is returned not served because the defendant, or its officers or office, cannot be found within the county, the clerk of the court in which the action was brought must publish a notice for four consecutive weeks * * *. Upon proof of such publication the default of the defendant may be entered and judgment rendered thereon, as if he had been served with summons."

Section 2733.11 does not expressly authorize service by publication upon nonresidents of the state, and it appears to this Court that the section provides only for service by publication upon persons not found in the county where the action is properly brought under § 2733.03, i. e., the county of residence or Franklin County if the action is brought by the attorney general. According to State ex rel. McKim v. Smith, 6 Ohio Cir.Ct.R. 410, if the defendants do not reside nor are found in the county, nor appear, notice by publication is not authorized. Defendants cite no authority that § 2733.11 was intended to authorize service by publication upon nonresidents of the state, and it is a well-recognized general rule that an *in personam* judgment cannot be rendered against a nonresident unless personal service has been had upon him. Oil Well Supply Co. v. Koen, 64 Ohio St. 422, 60 N.E. 603. Section 2703.14 of the Ohio Revised Code, which enumerates exceptional instances where service by publication upon nonresidents of the state is authorized, does not include a quo warranto action against an individual nonresident of Ohio. Such service against nonresidents of the state, even if authorized, would also appear to violate the standards of due process of law announced in Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Moreover, as plaintiffs suggest, a quo warranto judgment in Ohio is enforceable by contempt proceedings under § 2733.19. But contempt proceedings also require personal jurisdiction over defendants to comply with due process requirements. In re Wright's Estate, Ohio App., 123 N.E.2d 53. The apparent lack of jurisdiction of Ohio courts to give quo warranto relief as against the nonresident defendants in

the instant case also serves to make the Ohio remedy at law inadequate.

Still another reason why quo warranto proceedings in Ohio do not provide an adequate remedy is that under Ohio law, quo warranto relief is available only "against a person who usurps, intrudes into or unlawfully holds or exercises * * an office in a corporation created by the authority of the state." Section 2733.01 (A). However, in the instant case, plaintiffs, among other things, challenge the removal of director Redmond from his positions as vice-chairman of the board of directors and member of the executive committee. Since there have been no replacements to either of these positions, there is, therefore, no defendant who is usurping, intruding into or unlawfully holding or exercising either of these positions, as would be required if quo warranto were to be available.

Additionally, since quo warranto proceedings do not provide a basis for litigation of the validity of such other resolutions at the meeting of July 23, 1965, as the substitution of counsel for the corporation and the reduction of the executive committee from four to three persons, quo warranto proceedings would not be adequate to provide all the relief sought by plaintiffs. It must be noted that even if plaintiffs were to succeed in invalidating the election of defendant Gordon as Chairman of the Board and of the executive committee and defendant Doner as a member of the Board under Ohio quo warranto proceedings, plaintiffs would still not attain sufficient control of the Board of Directors to achieve in a board meeting the other elements of relief sought in the instant suit.

This Court sitting as a court of equity is not barred from granting complete relief where Ohio quo warranto proceedings do not provide a proper method of litigating the suit, as noted above. Defendants argue that this Court has no jurisdiction over the instant case because the Ohio quo warranto remedy is exclusive. However, quo warranto is not an exclusive remedy unless it is adequate, Toledo Traction, Light &

Power Co. v. Smith, supra, 205 F. 643, 662-3 (N.D.Ohio 1913), and this Court has already concluded that quo warranto proceedings in Ohio would not be adequate in the instant case.

In two variant arguments on the quo warranto theme, defendants contend in support of their motion to dismiss that since plaintiffs have no standing under the applicable Ohio law to maintain an action to try title to corporate office, and also because the Ohio Attorney General has not been joined as an indispensable party, the action must be dismissed. These arguments also depend upon the contention, already discussed, that Ohio quo warranto proceedings are an adequate and exclusive remedy in the instant case. It is true that under Ohio Revised Code § 2733.05, an action in quo warranto must be brought by the attorney general or a county prosecutor. However, the failure to join the Ohio Attorney General in the instant suit is not fatal because the instant suit raises issues not susceptible of adjudication under Ohio quo warranto proceedings, as already noted. Defendants' insistence on treating the instant case as a quo warranto case ignores the insufficiency of Ohio quo warranto proceedings, as already mentioned.

With respect to defendants' objection to plaintiffs' standing to sue, this Court agrees with plaintiffs that standing is a procedural matter and not a matter of state substantive law binding on a Federal Court. As the Court stated in Gas Service Co. v. Hunt, 183 F.2d 417, 419 (CA10, 1950): "The right of action against the wrongdoer is substantive. * * * But the person in whose name the action may be prosecuted for the enforcement of the substantive right is procedural, not substantive." The question of standing is governed by Rule 17 (a) of the Federal Rules of Civil Procedure rather than by state substantive law. Defendants' reliance on the Erie R. R. v. Tompkins case in this regard is misplaced, for defendants appear to ignore the distinction between the substantive right of action and the proce-

dural question of the name under which the action may be brought. The Erie case did not involve a question of standing at all, but rather whether plaintiff had the substantive rights of a licensee or only a trespasser. Certainly, in the instant case, plaintiffs, as the parties allegedly aggrieved, are the real parties in interest and therefore have standing to sue under Rule 17(a).

As for defendants' objection that the Ohio Attorney General has not been joined, it cannot be said that the Ohio Attorney General has such an interest in this controversy that a final decree cannot be entered without affecting his interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience, under the test for indispensable parties first announced in Shields v. Barrow, 17 How. (58 U.S.) 129, 130, 15 L.Ed. 158 (1955). The Ohio Attorney General has no separate interest of his own to represent in this controversy. If added as a party plaintiff, he would merely act as a *pro forma* representative of the plaintiffs' interests. Further, the Ohio Attorney General will not be adversely affected by any judgment rendered in this case, nor will his absence preclude a final termination of the controversy, as defendants contend. Since the Ohio Attorney General would merely represent the interests of plaintiffs, he must be considered in privity with the plaintiffs and will, therefore, be bound by any judgment rendered in this case as it affects plaintiffs' rights to corporate office. Chicago, R. I. & P. Ry. v. Schendel, 270 U.S. 611, 618, 46 S.Ct. 420, 70 L.Ed. 757 (1926); Jamison v. Garrett, 92 U.S.App.D.C. 232, 205 F.2d 15 (1953). Defendants cite no authority that the attorney general would not be a privy. Instead they appear to rely heavily on language in the case of Davenport v. Dows, 85 U.S. (18 Wall.) 626, 21 L.Ed. 938 (1874), disapproving a judgment in a shareholders' derivative suit which would "allow the corporation to renew the litigation in another suit, involving precisely the same subject-matter." However, the Davenport case is not dispositive, since in the instant case there is no such problem of relitigation of this controversy in Ohio by the attorney general as a privy to this suit for the reasons above stated.

Finally defendants contend that the action should be dismissed in the exercise of the Court's discretion to refuse to entertain an action seeking a declaratory judgment, since the Court's decision would neither serve a useful purpose nor would it settle the controversy. Defendants argue once again in this connection that the controversy cannot be finally resolved in this Court because the Ohio Attorney General would remain free to bring a quo warranto action raising the same issues. However, as already noted, quo warranto proceedings in Ohio would not suffice to raise all the issues in the instant case, and as for those issues which could be raised in Ohio quo warranto proceedings, the Ohio Attorney General would be bound as a privy to plaintiffs by any judgment rendered in this Court.

The motion to dismiss the complaint must be denied. An appropriate order may be submitted.