## WEISS et al. v. ROUTH et al.
### No. 228.

Circuit Court of Appeals, Second Circuit.

May 2, 1945.

---

[2] Phelps v. United States, 274 U.S. 341, 47 S.Ct. 611, 71 L.Ed. 1083.

194

See, also, 52 F.Supp. 418.

Louis D. Frohlich and Schwartz & Frohlich, all of New York City (Herbert P. Jacoby, of New York City, of counsel), for appellants.

James V. Hayes and Donovan Leisure Newton & Lumbard, all of New York City (J. Leo Coupe, of Utica, of counsel), for appellees.

Before L. HAND, SWAN and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from a judgment dis- missing a complaint on the merits after trial in a removed action, brought to recover the loss in value of 500 shares of common stock owned by the plaintiffs in the United States Distributing Corporation, incorporated under the laws of Virginia. On December 31, 1942, that corporation was merged with a Delaware corporation known as the Pittston Company, and Routh, the individual defendant, was a director of both companies, and took part in the merger. The common shareholders of the United States Distributing Corporation for each common share received one-twentieth of a share of new common stock in the Pittston Company; the preferred shareholders for each preferred share received one share of "Class A" preference stock and one share of common stock in the Pittston Company. The plaintiffs disapproved the merger and voted against it at the shareholders' meeting; but a majority approved it, and it went into effect. In computing the exchange a credit was allowed to the preferred shares for cumulated dividends which had not been paid for a period of twelve years; and of this the plaintiffs complained on the theory that preferred dividends, until declared, are not debts of the corporation, and that it was not permissible to credit the preferred shares with them, even though the charter made preferred dividends cumulative.

Section 3822 of the "General Corporation Law" of Virginia, Code 1942, provides for the merger of corporations upon a majority vote at a meeting of shareholders called for that purpose. Subdivision (b) provides that if any shareholder is dissatisfied with the terms of a merger, and has voted against it, he shall be entitled to "the fair cash value of his stock"; and by applying "to the circuit court of the county * * * wherein the principal office of the corporation * * * is located * * * or to the chancery court of the city of Richmond * * * in the event the principal office of the corporation * * * is located in the city of Richmond,[1] to have the fair cash value of his stock * * * appraised by three disinterested persons, residents of this State, appointed by the court." The appraisers are to conduct hearings and report to the court, and if the shareholder is not satisfied, he may apply to the court "to set aside the finding of the appraiser; and the court * * * if of

[1] The principal office of the United States Distributing Corporation was in the City of Richmond.

the opinion that the valuation is just, shall deny the application and * * * shall confirm * * * the amount * * * but if the court * * * be of opinion that the valuation is not just * * * the amount thereof shall be set aside, and * * * the court * * * shall proceed to ascertain the fair cash value of the stock * * * and shall enter judgment * * * accordingly." The judge found that the common shares of the United States Distributing Corporation at the time of the merger, had "no fair cash value"; basing his conclusion upon the fact that the arrears of cumulated preferred dividends constituted a credit which should not have been disregarded upon the merger.

The objection was raised in limine that § 3822 gave an exclusive remedy to dissatisfied shareholders; but Judge Goddard overruled it. Weiss v. Atkins, D.C., 52 F.Supp. 418. He held that Winfree v. Riverside Cotton Mills, 113 Va. 717, 75 S.E. 309, had decided, under an earlier act, that, although a dissenting shareholder could not upset the merger, he might, upon general equitable principles, recover the fair cash value of his shares, and that his remedy was not limited to the appraisal provided in the statute. He also held that Craddock-Terry Co. v. Powell, 181 Va. 417, 25 S.E.2d 363, had decided that the enactment of § 3822 in 1922 had not changed this result, and that therefore the district court had jurisdiction over an action in equity to award the fair value of his shares to a dissenter. Arguendo, we shall accept this ruling; and, although it does not inevitably follow that a dissenter may file such an action in the courts of another state, we shall assume that also. It follows that both the New York Supreme Court in which the action was originally brought, and the district court to which it was removed, had jurisdiction over the action at bar. It does not however also follow that they should have asserted that jurisdiction. That question was not raised before Judge Goddard or before us: we have taken the objection of our own motion, for upon it depends the propriety of entertaining the action at all. When a trial involves "the internal affairs" of a corporation, the rule is that the courts of a foreign forum will not assume jurisdiction over it; and the first question is whether the doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, applies: i. e. whether in deciding to accept or refuse jurisdiction we should follow the state law. It might be argued that those considerations which will set a court in motion are peculiar and personal to itself, and that it does not follow that what is enough to move a state court to act, should be enough to move a federal; or vice versa. Such a doctrine would, however, imply that the decision to accept jurisdiction is not controlled by any principle and may be at the judge's whim; and that would certainly be much too strong a statement. Here, as elsewhere, although judicial discretion does indeed imply that the limits are not rigidly fixed, it does not mean that there are none; and in dealing with the question at bar, we are to remember the purpose of conformity in "diversity cases." It is that the accident of citizenship shall not change the outcome: a purpose which extends as much to determining whether the court shall act at all, as to how it shall decide, if it does. For this reason it seems to us that we should follow the New York decisions.

What are "internal affairs" of a corporation is not altogether transparent; as appears from the division in the Supreme Court in Rogers v. Guaranty Trust Co., of New York, 288 U.S. 123, 53 S.Ct. 295, 77 L.Ed. 652, 89 A.L.R. 720, where, although all the justices agreed upon the principle, they differed in its application. The mere fact that an inquiry into the conduct of the corporation will be necessary, is not determinative: for example, an action for the company's benefit will lie in a foreign forum against directors for malfeasance. Miller v. Quincy, 179 N.Y. 294, 72 N.E. 116. So too an action to compel the issue of a share certificate on which the corporation claims a lien. Travis v. Knox Terpezone Co., 215 N.Y. 259, 109 N.E. 250, L.R.A.1916A, 542, Ann.Cas. 1917A, 387. The test is whether "considerations of convenience or of efficiency or of justice point to the courts of the domicile of the corporation as the appropriate tribunals." Travis v. Knox Terpezone Company, supra, 215 N.Y. 259, 264, 109 N.E. 250, 251. For example, when the action required a determination of the proper assessment of a policyholder in an insurance company, it demanded too complete an overhauling of the company's affairs and too much interference with its relations with all its policyholders. Sauerbrunn v. Hartford Life Ins. Co., 220 N.Y. 363, 115 N.E. 1001. The same was true

when the plaintiff demanded the cancellation of an issue of preferred shares (Sternfeld v. Toxaway Tanning Co., 290 N.Y. 294, 49 N.E.2d 145); or that the corporation "redeem preferred stock," or, in the alternative, pay cumulated dividends upon it (Cohn v. Mishkoff-Costello Co., 256 N.Y. 102, 175 N.E. 529. Miesse v. Seiberling Rubber Co., 264 App.Div. 373, 35 N.Y.S. 2d 504); or that a consolidation should be cancelled because the assets had been fraudulently undervalued (Koster v. Shenandoah Corp., 258 App.Div. 1079, 18 N.Y.S.2d 38; leave to appeal denied 283 N.Y. 778, 27 N.E.2d 819). In Nothiger v. Corroon & Reynolds Corp., 266 App.Div. 299, 42 N.Y. S.2d 103; aff'd. 293 N.Y. 682, 56 N.E.2d 296, the action was to compel the corporation to set aside a sum provided in the charter, as security for the preferred shares and to appoint a trustee to take charge of the fund. It is of course difficult to find a precedent on all fours; but Langfelder v. Universal Laboratories, 293 N.Y. 200, 56 N.E.2d 550, it seems to us, struck close to the situation before us. The action was for alternative relief: to declare a merger ineffective to cut off the interest of preferred shares and to compel the company to pay the difference between the value of those shares and what they had received on the merger; or, to declare that the merger should not affect the right of the preferred shareholders to cumulated dividends. In Cohen v. American Window Glass Co., 2 Cir., 126 F.2d 111, we ourselves refused to take jurisdiction in an action to enjoin a merger as unfair and to recover a dividend unlawfully paid.

By hypothesis each shareholder who voted against the merger, might in the case at bar separately file a suit in equity in a Virginia court to have his shares valued and to recover the amount from the corporation. That would not disturb the merger; and indeed the remedy of appraisal provided by § 3822 is in substance the same although the procedure is different. Yet it would be an onerous added burden upon the corporation to subject it to suit in any foreign forum where a shareholder could serve it; and, moreover, there would be no uniformity in the recoveries, and therefore no equality of treatment between the dissentients. It is true that if the procedure prescribed by § 3822 is not exclusive, inequality may also arise even though the actions in equity are confined to Virginian courts; but the situation is more within control than if the courts of foreign forums are also open. Indeed it may not be beyond the procedural resources of the Virginian courts to establish, if not a concourse of all dissenting shareholders, at least some common means of insuring equality; but even if that be not possible, and if each dissenter may prosecute his suit to a separate and different award, at least the awards will all be made by courts of Virginia. In that there would be a harmony pro tanto with that part of the declared purpose of § 3822, which provides that all the appraisers shall be residents of that state. It seems to us therefore that the court of a foreign forum has adequate ground at least for saying that it is the policy of Virginia to keep the ascertainment of the value of minority shares within its borders, even though dissenters are given alternative remedies.

Judgment reversed; complaint dismissed; not on the merits, but because the district court should have refused to entertain the action.