In re SILICONE GEL BREAST IMPLANTS PRODUCTS LIABILITY LITIGATION.

Cheryl ASHLEY, et al., Plaintiffs,

v.

DOW CORNING CORP., et al., Defendants.

Denise BENNETT, et al., Plaintiffs,

v.

AESTHETECH CORP., et al., Defendants.

Giovanna RHODES, et al., Plaintiffs,

v.

DOW HOLDINGS, INC., et al., Defendants.

Linda SANDEN, Plaintiff,

v.

BAXTER HEALTHCARE CORP., et al., Defendants.

Dorothy REYNOLDS–KUIPER, Plaintiff,

v.

BAXTER HEALTHCARE CORP., et al., Defendants.

Lucille GALE, et al., Plaintiffs,

v.

DOW CORNING CORP., Defendant.

Anunziata BALDONI, et al., Plaintiffs,

v.

BRISTOL–MYERS SQUIBB CO., et al., Defendants.

MDL No. 926.

No. CV 92–P–10000–S.

Civ. A. Nos. CV 92–P–10368–S, CV 93–P–13306–S, CV 93–P–14410–S, CV 94–11542–S, CV 94–P–11699–S, CV 94–P–13578–S and CV 94–P–14464–S.

United States District Court, N.D. Alabama, Southern Division.

April 25, 1995.

## OPINION

### (Forum Non Conveniens)

POINTER, Chief Judge.

The defendants seek to dismiss, on the ground of *forum non conveniens,* seven of the more than 10,000 breast-implant products liability cases pending in this court, based on diversity jurisdiction, as a result of initial filing here or of § 1407 multi-district transfers. These seven cases[1] involve personal injury or wrongful death claims against breast-implant manufacturers and component part suppliers, asserted by persons who are neither citizens nor residents of the United States and who received all their implants outside the United States.

As frequently occurs in cases involving this issue, the positions of the parties are the reverse of what one might expect, for the foreign plaintiffs are asserting that litigation in this country is more convenient, while the American defendants are asserting that litigation in other countries is more convenient. After considering and weighing all relevant private and public interest factors, the court concludes that it should deny the defendants' motions with respect to claims by New Zealand plaintiffs in one case and should grant the motions with respect to claims by all other plaintiffs in these cases, directing that their claims be resolved in the tribunals of other countries.

## I. DESCRIPTION OF CASES

Ashley (CV 92–P–10368–S) was filed in the United States District Court for the Eastern District of Michigan. The plaintiffs—311 women, most of whom are citizens and residents of Australia, as well as some spouses—assert causes of action based on negligence, breach of warranties, misrepresentations, and infliction of emotional distress. Plaintiffs contend that, of the eight defendants, one (Dow Corning) is incorporated and has its principal place of business in Michigan and that the others— McGhan Medical, Minnesota Mining and Manufacturing, Surgitek, Medical Engineering, Bristol–Myers Squibb, Cox– Uphoff, and Mentor—distributed implants in Michigan (although not to plaintiffs). The first motion to dismiss on the ground of *forum non conveniens* was filed by McGhan Medical, Minnesota Mining and Manufacturing, and Cox–Uphoff; but the primary briefing on this issue in this and the other cases has focussed on a later motion by Dow Corning.

Bennett (CV 93–P–13306–S) was filed in the United States District Court for the Eastern District of Michigan. The plaintiffs—863 women, who are citizens and residents of either Australia or Great Britain, as well as some spouses—assert most of the causes of action enumerated in the master complaint prepared for use in the breast implant litigation. Named as defendants are 41 companies—all of those listed in the master complaint except Mentor and Bioplasty.[2] The only connection of this litigation to Michigan is that two of the defendants (Dow Corning and Dow Chemical) are incorporated or have their principal place of business in Michigan. One of the defendants (Koken) is a Japanese company.

Rhodes (CV 93–P–14410–S) was filed in state court in Harris County, Texas, and then removed to the United States District

---

1. There are other cases involving claims by foreign claimants in which *forum non conveniens* motions have not—as yet—been filed.

2. Most claims against Mentor are barred as a result of a mandatory "limited-fund" class settlement previously approved and not appealed; claims against Bioplasty are barred as a result of bankruptcy proceedings.

Court for the Southern District of Texas. The plaintiffs—40 female citizens of New Zealand—assert causes of action based on strict liability, breach of warranties, misrepresentation, negligence, infliction of emotional distress, and violation of consumer protection laws. They named 42 companies as defendants. The only connection of these cases to Texas is that Texas was the residence of Dr. Thomas Cronin and Dr. Frank J. Gerow, originally named as defendants but later determined to have been improperly joined in an attempt to avoid federal diversity jurisdiction.[3] The plaintiffs in Rhodes have filed a notice of appeal from the final judgment (approving a global opt-out settlement) in Lindsey v. Dow Corning (CV 94–P–11558–S) and filed such a notice in the Rhodes case itself.[4] Since no final or otherwise appealable order had been filed in Rhodes, the purported appeal in Rhodes is a nullity and does not deprive this court of its jurisdiction to consider the motions to dismiss Rhodes on the ground of *forum non conveniens*.

Sanden (CV 94–P–11542–S) and Reynolds–Kuiper (CV 94–P–11699–S) were filed in state court in Harris County, Texas, and then removed to the United States District Court for the Southern District of Texas. The two individual plaintiffs, who are residents and apparently citizens of the Province of Alberta, Canada, assert a broad range of claims (adopted from another complaint) against Baxter Healthcare, General Electric, Dow Corning, Dow Corning–Wright, Dow Chemical, and Corning. The only connection of these cases to Texas is that Texas was the residence of Dr. Cronin, originally named as a defendant but later determined to have been improperly joined in an attempt to avoid federal diversity jurisdiction.

Gale (CV 94–P–13578–S) was filed in the United States District Court for the District of Columbia on behalf of Gale as a representative of a putative class consisting of approximately 150,000 breast-implant recipients who are citizens or residents of Canada (and their spouses and children) and on behalf of the Province of Alberta, Canada, as a representative of a putative class of Canada's nine other provinces with respect to implant-related health-care expenses incurred by the provinces. The sole defendant is Dow Corning, which was named as a representative of a putative defendant class consisting of all companies that manufactured or distributed breast-implant products or component parts (or controlled or conspired with such companies), including the Japanese company Koken. A broad range of claims—including negligence, breach of warranties, misrepresentations, and strict liability—is asserted on behalf of the plaintiff classes against members of the defendant class; these claims are not limited to those arising from implantations performed in the United States. The only connection of this litigation to the District of Columbia appears to be that members of the defendant class are alleged to have made misrepresentations to the Food and Drug Administration in Washington. After the *forum non conveniens* motion was taken under submission, plaintiffs amended the complaint to eliminate the request for certification of a defendant class or of a provincial government class. The case remains pending against Dow Corning by the Province of Alberta and on behalf of a putative class of Canadian implant recipients, their spouses, and children.

Baldoni (CV 94–P–14464–S) was filed in the United States District Court for the Southern District of New York on behalf of 18 Australian women. Their causes of action include negligence, breach of warranties, misrepresentations, strict liability, infliction of emotional distress, and violation of consumer protection laws. Plaintiffs contend that, of the four defendants, one

---

3. Doctors Gerow and Cronin, both now deceased, were instrumental in Dow Corning's original development of silicone breast implants.

4. An interesting feature of this appeal is that at least some of the 40 women named as plaintiffs in Rhodes and in the appeal of Lindsey may not be represented by the attorneys filing the Rhodes case and the appeal, and may oppose efforts to set aside the Lindsey settlement.

(Bristol–Myers Squibb) has its principal place of business in New York, one (General Electric) has its place of incorporation and principal place of business in New York, and that the other two (Medical Engineering and Dow Corning) have distributed implants (or implant component parts) in New York (although not to plaintiffs).

## II. PRINCIPLES

Many, but not all, of the basic principles that control this decision are provided in *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), *reh'g denied,* 455 U.S. 928, 102 S.Ct. 1296, 71 L.Ed.2d 474 (1982), and *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

■ (A) *Forum non conveniens* is recognized in federal court as a ground for dismissal even when subject matter jurisdiction is based on diversity of citizenship. *Piper, supra,* 454 U.S., at 248 n. 13, 102 S.Ct., at 262 n. 13.

■ (B) In federal diversity cases, *forum non conveniens* should be governed by federal law, not state law. The Supreme Court thus far has declined to decide this issue because it has not been faced with a discernible difference between federal and state law. *See Piper, supra,* 454 U.S., at 248, n. 13, 102 S.Ct., at 262, n. 13; *Gilbert, supra,* 330 U.S., at 509, 67 S.Ct., at 843. Similarly, with respect to four of the seven cases in which such motions have been filed in this litigation, there is no apparent inconsistency between state and federal law. This court cannot, however, wholly avoid this issue because state restrictions on *forum non conveniens* in force in Texas when three of the cases were filed may differ from federal standards.[5] The circuits differ regarding the governing law when a conflict exists. *Compare, e.g., Sibaja v. Dow Chemical Co.,* 757

F.2d 1215, 1219 (11th Cir.), *cert. denied,* 474 U.S. 948, 106 S.Ct. 347, 88 L.Ed.2d 294 (1985), and *In re Air Crash Disaster Near New Orleans, La.,* 821 F.2d 1147, 1154–1159 (5th Cir.1987), *vacated on other grounds,* 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989) (federal law controls), with *Weiss v. Routh,* 149 F.2d 193, 194–95 (2nd Cir.1945) (state law controls). In concluding that federal law controls, this court follows the Eleventh and Fifth Circuit opinions because (1) they are more consistent with the principles enunciated in the Supreme Court decisions announced after *Weiss* and, indeed, with *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); (2) notwithstanding the express pretermission of the governing law question, the Supreme Court opinions in *Piper* and *Gilbert* appear to be premised on development of federal common law, rather than on an interpretation of state law; (3) the Eleventh Circuit ordinarily provides the controlling law for this court; and (4) the Fifth Circuit would have provided the controlling law for the transferor court (*i.e.,* the Southern District of Texas, to which the cases had been removed).[6] Moreover, in this instance, the policy argument for application of state law in federal court is certainly weakened since the particular state law would no longer be utilized in cases currently being filed in that state.

■ (C) The presumption favoring the forum selected by a plaintiff has less force when, as in these cases, plaintiffs sue in a foreign forum rather than in their home forum. This principle stems not from an antipathy towards foreign nationals—indeed, it should likewise apply when a citizen of one state brings an action in another state. Rather, the presumption that plaintiffs have selected the most convenient forum is considered less reasonable when that forum is not their home forum. *Piper, supra,* 454 U.S., at 255–56, n. 23, 102 S.Ct., at 265–66, n. 23

---

**5.** The Texas legislature has recently changed its *forum non conveniens* law to parallel the federal *forum non conveniens* law.

**6.** In cases transferred under § 1407, the transferee court typically must apply the appropriate law that would have applied in the transferor court. It is unclear why, in deciding whether to apply

federal or state *forum non conveniens* law in the case of *In re Air Crash Disaster Near New Orleans, La., supra,* the court looked only to the law of Louisiana since, as noted in the opinion, most of the actions by foreign nationals had been filed in California or Florida.

(observing, however, that citizens or residents of the United States deserve somewhat more deference than foreign plaintiffs).

■ (D) Before dismissing a case based on *forum non conveniens,* the court must first determine that an alternative forum exists. Although differences in law in the forum court and the alternative forum that may favor the plaintiff or the defendant are ordinarily not relevant, the court may conclude that dismissal would not be in the interests of justice "if the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper, supra,* 454 U.S., at 254, 102 S.Ct., at 265.

■ (E) The *forum non conveniens* determination is committed to the sound discretion of the trial court. The trial court should consider and weigh all relevant public and private interest factors that bear upon the relative convenience of the forums, rather than compare the rights, remedies, and procedures in the forums that might advantage or disadvantage the respective parties. *Piper, supra,* 454 U.S., at 257, 102 S.Ct., at 266; *Gilbert, supra,* 330 U.S., at 511–12, 67 S.Ct., at 844.

■ (F) In weighing these factors, the court may consider—or even condition its decision upon—concessions by a party, such as waiving statutes of limitations or objections to process, personal jurisdiction, or admissibility of evidence, or agreeing that a judgment would be enforceable against a related non-party. Typically, such concessions have been offered by or imposed upon moving defendants, but logically concessions could be offered by or imposed upon the plaintiffs as conditions for allowing a case to remain in courts of the United States.

Thus, in this litigation, Dow Corning, in an effort to bolster its position that claims in federal courts of the United States by these implant recipients should be dismissed in favor of litigation in the foreign tribunals has offered to agree, if necessary, that (1) it submit to the jurisdiction of those tribunals and accept service of process from those

tribunals, (2) it will be bound to pay final judgments rendered against it by such tribunals, (3) it will exclude from calculation of statutes of limitations the periods that the actions were pending in the United States, and (4) it will not object in foreign tribunals to admission of evidence that would be admissible in United States courts. Other defendants have indicated a willingness to be subjected to similar conditions if the *forum non conveniens* motions are granted.

In response, counsel for plaintiffs in the *Ashley* case, as part of their argument for retention of jurisdiction by United States courts, have agreed that (1) they will make available to defendants relevant documents in their possession in Australia, (2) they will cooperate—as by consenting to issuance of letters rogatory—in arranging depositions of implanting physicians located in Australia, and (3) they will arrange for their Australian clients to be present in the United States for depositions or for trial testimony. No doubt plaintiffs in the other cases would agree to similar conditions.

### III. DISCUSSION

The court first addresses the pending *forum non conveniens* motions as if each implant-recipient plaintiff in these seven cases is a resident and citizen of Australia, Canada, England, or New Zealand, whose implants were performed in those countries. Because a few of these persons apparently are citizens of the United States [7]—and it is possible that some may have had implants performed in this country—the court will then consider the special problems presented by joining them as plaintiffs in cases brought primarily by foreign citizens. Although the briefs have sometimes referred to the compensation and tort systems in other countries, the court is not now attempting to resolve the questions that may arise in cases filed by plaintiffs from such other countries, although some of the principles discussed in this opinion would obviously have some relevance in such cases.

---

7. According to plaintiffs' counsel, five of the 311 plaintiffs in *Ashley,* though apparently Australian residents, are American citizens.

A recurring issue relates to the significance, if any, of the fact that implant recipients from foreign countries, on either an opt-out or opt-in basis,[8] have been permitted to be class members for settlement purposes in a global settlement approved by this court. Plaintiffs argue that it would be inconsistent with the concept of this settlement to bar domestic litigation on *forum non conveniens* grounds by foreign implant-recipients who have been eligible to participate in the settlement.

Plaintiffs' argument is unpersuasive. The fact that claims of foreign claimants could, if desired, be resolved through a settlement procedure administered in this country does not mean that it would likewise be convenient for such claims to be resolved through litigation in this or other federal courts. Indeed, one of the reasons for this court's approving a settlement providing somewhat less benefits to foreign claimants than to domestic claimants was the potential obstacle that *forum non conveniens* considerations would present to foreign claimants attempting to pursue litigation in this country. Moreover, the failure of a foreign claimant to opt out from the settlement would not preclude her from pursuing whatever remedies she might have in the tribunals of foreign countries; and, in affording a foreign claimant two elections to opt out, the settlement did not promise the existence of an American forum. In short, dismissal of foreign claims on *forum non conveniens* grounds, while not required by the settlement, would certainly not be inconsistent with its terms or purpose.

Defendants have demonstrated that alternative forums exist in Australia, Canada, and England in which plaintiffs' claims could be resolved. Several cases have been filed in Canada, and, indeed, in two of the Canadian provinces cases have been certified as class actions under provincial equivalents of Rule 23. A class action case was also instituted in Australia on behalf of Australian residents, though at least temporarily discontinued.

While this court has not been advised of any pending litigation in England, there is no doubt that the courts of that country are available to hear such claims.

■■■■ The situation is more complex with respect to claims by New Zealanders. Traditionally, they would have been able to pursue, as in other common-law jurisdictions, judicial claims for implant-related injuries. However, injuries from 1974 to 1992 were, as a result of legislation then in effect, compensable not through the country's judicial system, but only under a regulatory system funded by contributions from the country's employers, motorists, medical practitioners, and general tax revenues. Relegation of a claimant to an administrative forum for compensation would not, in and of itself, preclude dismissal based on *forum non conveniens*. However, legislation in 1992, though generally reinstituting judicial remedies for product-related injuries, contained transitional provisions that have the effect of precluding any claim for compensation, judicial or administrative, for 1974–92 injuries if the claimants did not file a compensation claim by October 1992. The consequence is that New Zealand women with breast-implant claims for injuries arising from 1974–92 who did not file administrative claims by October 1992 have no claim for relief in New Zealand—and, given the nature of the administrative system, the defendants could not, by consent or waiver, provide a New Zealand forum for the resolution of such claims. The court concludes that, for such claimants, no alternative forum exists and the defendants' motions must therefore be denied. *See Piper,* 454 U.S., at 254–55 n. 22, 102 S.Ct., at 265 n. 22. For those, however, who can use the court system or pursue administrative remedies in New Zealand, the court concludes that an alternative forum does exist.

■■■ The particular causes of action, defenses, recoverable damages, and procedures recognized and applied in the courts of such

---

8. Recipients from Australia and the Canadian provinces of Ontario and Quebec were excluded from the settlement class definition, though permitted to "opt in" on a purely voluntary basis; recipients from other foreign countries or Canadian provinces were included within the settle- ment class definition, though permitted to "opt out." Foreign registrants, whether in settlement class by opting in or failing to opt out, have been assured of a second "opt out" period after the "grid" amounts for foreign claimants has been determined.

countries may be less favorable to plaintiffs than in United States courts. This court rejects, however, any contention that the remedy provided in such tribunals "is so clearly inadequate or unsatisfactory that it is no remedy at all." *Cf. Piper, supra,* 454 U.S., at 254, 102 S.Ct., at 265. The pending motions, accordingly, are to be decided based on a weighing of the private and public interests bearing on the relative convenience of the forums, rather than on a desire to advantage either the plaintiffs or the defendants. *Piper, supra,* 454 U.S., at 257, 102 S.Ct., at 266.

Plaintiffs stress that, in countries such as these, contingent fees are prohibited and unsuccessful plaintiffs may be taxed with attorney's fees of the defendants—facts which, they say, will make alternative forums inadequate as a practical matter. Support for plaintiffs' contention comes from *Lehman v. Humphrey Cayman, Ltd.,* 713 F.2d 339 (8th Cir.1983) (sailboat accident in Cayman Islands), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 708, 79 L.Ed.2d 172 (1984); and *Macedo v. Boeing Co.,* 693 F.2d 683 (7th Cir.1982) (airplane crash in Portugal). In reversing *forum non conveniens* dismissals of these cases, the appellate courts based their decisions, in part, on the trial court's failure to consider the real financial burdens that foreign litigation—including prohibition of contingent fees and the requirement of prepayment of substantial court costs—would have on the plaintiffs. Especially in *Lehman,* and to a lesser extent in *Macedo,* the courts were troubled by imposing these burdens with respect to claims for wrongful death of persons who had been citizens and residents of the United States.

Other appellate decisions have viewed the contingent fee argument to be of little significance in making the *forum non conveniens* determination. *Coakes v. Arabian American Oil. Co.,* 831 F.2d 572 (5th Cir.1987); *Dowling v. Richardson–Merrell, Inc.,* 727 F.2d 608 (6th Cir.1984). In *Piper,* moreover, the Supreme Court treated these considerations not as factors supporting retention of jurisdiction by American courts, but rather as reasons why dismissal might be appropriate to prevent further congestion in the United States courts. 454 U.S., at 252 n. 18, 102 S.Ct., at 264 n. 18.

Here, however, there is no reason to believe that implant-recipients residing in Australia, Canada, England, or New Zealand will be unable to obtain counsel and pursue litigation in courts of those countries. Most, if not all, of these claimants who are litigants in this country already have separate counsel who regularly represent personal injury claimants in the courts of such other countries. Such practitioners will have the benefits, at relatively minimal expense, of the massive discovery obtained from the defendants over the past two and one-half years. The primary discovery remaining will be conducted in the countries where the plaintiff or her counsel resides. The potential for taxation of attorney's fees against the losing party is a two-way street: though a risk to a plaintiff who loses, it also provides a means for successful plaintiffs to recoup their attorney's fees. In addition, litigation in these countries will not require any significant expenses for the translation of documents.

Many of the "private" interests affecting the relative convenience of forums in this country and the other four countries have already been alluded to. Perhaps the most important factor is the relative ability of litigants to gather and present evidence that would be relevant to the issues before such courts. In this litigation, virtually all of the discovery plaintiffs might need from defendants—in the form of document production and depositions (video and audio)—has already been obtained, and is available at minimal cost for presentation in other courts, together with appropriate orders and stipulations that would facilitate the admission of such evidence at trial. What essentially remains is discovery of evidence from the plaintiffs themselves and from the implanting and treating physicians relating to the plaintiffs' implantations, explanations, ruptures, injuries, and damages. This evidence will largely come from persons outside the United States and, indeed, from the countries where the cases would be tried if the defendants' motions are granted.

In many cases—such as claims for wrongful death from an airplane crash—the evi-

dence relating to particular plaintiffs will, though relevant on certain issues, be relatively uncontroverted or not be a central feature of the litigation. As this court knows, however, both from having tried one breast-implant case and from having been informed about the trial of implant cases in other courts, a major part of the trial of a breast-implant claim concerns matters peculiar to the individual plaintiffs—not merely the information provided by the plaintiffs and their family members, but also the information known by plastic surgeons and provided by them to their patients, the procedures such surgeons employed during implantation or in attending to encapsulations or ruptured implants, and the diagnoses and treatment provided to implant recipients over a period of many years by internists, rheumatologists, and other physicians. That many plaintiffs have professed a willingness to appear in the United States for a deposition or for trial and to cooperate in obtaining letters rogatory for the examination of physicians and medical records in other countries does not overcome the inherent problems that trials of these cases in the United States would present.

Difficult choice-of-law issues will arise if United States courts attempt to resolve claims that are based on the distribution and implantation of breast implants in other countries and that involve injuries occurring and medical services provided under the laws of such countries. Some plaintiffs have argued that, unless allowed to litigate in the United States, they may be unable to take advantage of allegedly misleading representations made by defendants to the FDA or of that agency's decision halting further distribution of silicone-gel implants. But differences in the positions taken by this government and by other governments in weighing the relative risks and benefits of breast implants actually highlight the significant interest such countries have in resolving claims relating to implantations performed in their jurisdiction, as well as in administering their own health-care systems. As in *Piper, supra*, 454 U.S., at 260, 102 S.Ct., at 268, this concern is a public interest factor that sup-

ports dismissal of such claims brought in this country.

Another public interest factor supporting dismissal relates to the burden that litigation of these foreign claims would impose on courts in this country. In just these few actions, more than 1,000 foreign claimants are joined as named plaintiffs, and more than 100,000 others are included as members of a putative class. It is no answer that the evidence on behalf of these claimants relating to the culpability of the numerous defendants or to issues of "general causation" may mirror that presented in litigation by domestic plaintiffs. While courts in this country will be searching for ways to avoid the necessity of a separate trial of each plaintiff's claim, it is clear that many, many trials involving this "common evidence" will be needed—with the time required for presentation of such evidence at each trial consuming weeks or even months. Moreover, even if some aggregation of claims should be found acceptable for trial of some of these common issues, the special questions regarding implantation, medical history, medical treatment, injuries, and specific causation would add many days of trial for each individual litigant.

Some foreign plaintiffs have argued that these burdens on American courts are exaggerated because of the impact of the pending global settlement and because, measured against the large number of domestic claims, the incremental burden imposed by foreign claimants would be relatively small. Neither argument is persuasive. Approximately 40% of the some 1,000 federal-court litigants [9] who have opted out of the settlement are foreign claimants—and this percentage does not account for those additional federal litigants who, being citizens of Australia or of the provinces of Ontario and Quebec, were not required to opt out in order to institute or pursue litigation in the United States. This burden would be aggravated if, because of the current appellate attack by some foreign plaintiffs or because of inadequate funding, the global settlement should fail and the timely claims under the settlement for current disease compensation then become

---

**9.** In addition, over 1,500 foreign implant-recipients have opted out of the settlement to pursue

litigation in the state courts of this country.

transformed into litigation claims. While, as a percentage, these foreign claims are relatively low (only about 4% of the total number), the real impact on American courts would be measured in absolute terms; namely, by adding some 10,000 plaintiffs from foreign countries to the many thousands of domestic plaintiffs whose claims would be severely crowding the American courts.

The argument has been made that retention of foreign claims in American courts will serve a public interest of this country by deterring its manufacturers from producing and distributing defective products. The litigation of breast implant claims by domestic claimants has, however, already had tremendous impact on American producers—leading to the bankruptcy of one company, to a Rule 23(b)(1)(B) "limited fund" class action with respect to another company, and presenting major financial challenges to the continued economic vitality of still other implant manufacturers. As in *Piper, supra*, 454 U.S., at 260–61, 102 S.Ct., at 268, "the incremental deterrence that would be gained if [these trials] were held in an American court is likely to be insignificant. The American interest [in resolving these foreign claims] is simply not sufficient to justify the enormous commitment of judicial time and resources that would inevitably be required if the [cases] were to be tried here."

 As indicated at footnote 7, *supra*, a few of the plaintiffs in the *Ashley* case apparently are citizens of the United States though they are residents of, and had their implantations performed in, other countries. In such circumstances, citizenship is as fortuitous and unrelated to the causes of action as was location of the tort in *Lehman, supra*, 713 F.2d 339. As discussed in *Lehman*, citizenship should have no "talismanic significance." Here, notwithstanding the greater deference ordinarily given to citizens of the United States respecting their choice of a forum, the court concludes that, having volitionally decided to reside and have implantations performed in such foreign countries, these United States citizens may appropriately be relegated to forums in such countries for resolution of their breast implant claims.

As also noted, there may be a few persons in these cases who, though citizens or residents of another country, have had a breast implantation performed in the United States. If there are in fact any such persons in these cases, plaintiffs' counsel should identify them in an appropriate motion under Fed.R.Civ.P. 59 to alter the rulings in such cases.

The question remains as to what action, if any, the court should take with respect to the New Zealand plaintiffs in *Rhodes* (CV 93–P–14410–S). As indicated, a motion to dismiss on *forum non conveniens* grounds cannot, because of the lack of an alternative forum, be granted with respect to claims for injuries arising during 1974–92 by such persons who did not file an administrative claim by October 1992. While most, if not all, of the 40 implant-recipient plaintiffs in *Rhodes* apparently would be persons whose United States claims therefore should not be dismissed, it is unclear as to whether any of them may have viable claims for compensation under the New Zealand judicial and administrative systems. The court concludes that the appropriate course of action is to deny defendants' *forum non conveniens* motions in CV 93–P–14410–S, but without prejudice to resubmission of amended motions upon a showing that most do continue to have viable New Zealand claims. Should it appear that only a few would have viable New Zealand claims, the court would anticipate denying a motion to dismiss their particular claims since the problems for United States courts in resolving those few additional claims would be an insignificant additional burden when compared with the problems those claims would present to the New Zealand forums.

## IV. CONCLUSION

Defendants' motions to dismiss *Rhodes* (CV 93–14410–S) on grounds of *forum non conveniens* will by separate order be denied, without prejudice to resubmission if factually warranted, as discussed in this opinion.

Defendants' motions to dismiss the other six cases on grounds of *forum non conveniens* will be granted by separate orders, made final under Fed.R.Civ.P. 54(b), but upon the following conditions:

> (1) Each such defendant will submit to the jurisdiction of, and accept service of process from, appropriate tribunals of Australia, Canada, and England with respect to breast-implant claims relating to implantations performed in those countries.

(2) Each such defendant will, if so served, be bound to pay final judgments rendered against it by such tribunals relating to such claims.

(3) Each such defendant will not, in raising any statute of limitations or similar defense in such tribunals, include the period that a suit, not barred by a statute of limitations in this country, was pending against it in a court of the United States.

(4) Each such defendant will not object to evidence offered in such tribunal that, if offered in federal courts of the United States, would have been admissible against it.

Any defendant unwilling to accept such provisions as conditions for granting of these motions shall so notify this court through an appropriate motion filed under Fed.R.Civ.P. 59.